UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAQUES PLUMART AND
THERESA PLUMART,

                              Plaintiffs,        05-CV-6230T

               v.                                **DECISION
                                                 and ORDER**

UNITED STATES OF AMERICA,

                              Defendant.
_____

UNITED STATES OF AMERICA,

               Third-Party Plaintiff,

               v.

TOWN OF GATES,

               Third-Party Defendant.


_____


## <u>INTRODUCTION</u>

     Plaintiffs Jaques Plumart and Theresa Plumart ("the Plumarts"
or "the plaintiffs") brought this action against the United States
Postal Service ("USPS") pursuant to 28 U.S.C. 1346(b) seeking
damages for injuries allegedly caused by a postal truck driver's
negligence in a three-car collision.  The United States of America
("the United States"), then brought this third-party action
pursuant to 28 U.S.C. 1345 against Third-Party Defendant Town of
Gates ("the Town of Gates") alleging that the Unites States is
entitled to indemnification with respect to claims asserted by the

plaintiffs.  The Town of Gates moves for summary judgment on the grounds that it is immune from liability pursuant to Title VII, Article 23, § 1104 of New York state's Vehicle and Traffic Law. The United States opposes summary judgment claiming that questions of fact exist as to: (1) whether Officer Bramer was engaged in an "emergency operation" under Vehicle and Traffic Law § 114-b, and; (2) whether Officer Bramer engaged in "reckless disregard of the safety of others" under § 1104(e).

For the reasons set forth below, I hereby grant summary judgment for the Town of Gates on the first question and deny summary judgment on the second question.

## BACKGROUND

On Tuesday, July 15, 2003, at approximately 3:45 - 4:00 p.m., Town of Gates Police Officer Robert Bramer ("Bramer" or "Officer Bramer") was on patrol in his squad car when he overheard a radio dispatch to a fellow officer concerning an attempted car theft. Officer Bramer then overheard second radio message from dog warden Mario Madau who was stopping a pedestrian suspected of being involved in the car theft.  Officer Bramer decided to assist, turned onto Chili Avenue from Renouf Drive, and proceeded eastbound on Chili at about 40 mph to the scene where the investigation was taking place.

While driving on Chili Avenue towards the Hinchey Road intersection, Officer Bramer activated his emergency lights but did

not activate his siren.   Cheryl Strong, a motorist driving eastbound on Chili, witnessed Bramer's police car slow down as it approached the red traffic signal at Chili and Hinchey.   Officer Bramer's car was then struck by the postal truck driven by John Hotchkiss which had entered the intersection.   The collision caused Officer Bramer's car to collide with the car traveling westbound on Chili Avenue in the intersection driven by Plaintiff Theresa Plumart.

Officer Bramer testified in his deposition that, as required by department regulations, he maneuvered his car into the center lane of Chili Avenue 300 to 400 feet before reaching the intersection. [1]   However, witnesses Cheryl Strong and Jaqueline Ladd both stated in their reports to police that Officer Bramer was in the curb lane prior to the collision.   Officer Bramer also testified in his deposition that he remembers nothing that happened for about 200 feet prior to the collision. [2]   In her statement given to police, Ms. Plumart stated that the postal truck entered the intersection "through the parking lot ... at a fast speed." [3]  She also stated, "The mail truck hit the officer's car which turned it sideways.   The police car then slid across the intersection and hit my car on the front bumper."   In a separate police statement,

---

[1] See Bramer Dep. at 9, 20-22.

[2] See Bramer Dep. at 10.

[3] See "Gates Police Department Statement of Fact" given by Theresa Plumart, attached as Ex. D to Declaration of David H. Walsh, IV in support of Def.'s Mot. for Summ. J. dated December 8, 2006.

witness Jacqueline Ladd stated that she saw the traffic light for westbound Chili Avenue traffic turn green shortly before the collision. [4]

The Plumarts filed a claim for damages with the Postal Service on February 9, 2004 which was denied on November 17th, 2004.  They then filed a request for reconsideration on November 30, 2004 which was granted, but their claim was again denied on April 12, 2005. On May 9, 2005 the Plumarts filed this action against the Postal Service seeking damages in the amount of $1,000,000.

## DISCUSSION

### I.   SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When considering whether a genuine issue of fact exists for the purposes of a summary judgment motion, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. Scott v. Harris, 127 S. Ct. 1769, 1775 (2007).

---

[4] See "Gates Police Department Statement of Fact" given by Jacqueline Ladd, attached as Ex. D to Declaration of David H. Walsh, IV in support of Def.'s Mot. for Summ. J. dated December 8, 2006.

Under Rule 50(a) of the Federal Rules of Civil Procedure, a district court is permitted to enter judgment as a matter of law when it concludes that the evidence is legally insufficient, but it is not required to do so.  <u>Unitherm Food Sys. v. Swift-Eckrich, Inc.</u>, 546 U.S. 394, 405 (2006).  "To the contrary, the district courts are, if anything, encouraged to submit the case to the jury, rather than granting such motions."  <u>Id.</u>  The question is "whether the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor."  <u>Annis v. County of Westchester</u>, 136 F.3d 239, 247 (2d Cir. 1998) (quoting <u>Jund v. Town of Hempstead</u>, 941 F.2d 1271, 1290 (2d Cir. 1991)).

## II. DRIVERS OF EMERGENCY VEHICLES ARE NOT PROTECTED FROM THE CONSEQUENCES OF "RECKLESS DISREGARD FOR THE SAFETY OF OTHERS."

Drivers of emergency vehicles have a primary obligation to respond quickly to preserve life and property and to enforce the criminal laws.  <u>Saarinen v. Kerr</u>, 84 N.Y.2d 494, 497 (1994).  Consequently, in recognition of these drivers' special needs, the Legislature enacted Title VII, Article 23, § 1104 of New York state's Vehicle and Traffic Law.  <u>Id.</u>  Section 1104 qualifiedly exempts drivers of emergency vehicles from certain traffic laws when they are "involved in an emergency operation."  <u>Id.</u>  Specifically, the statute provides that:

> (a)  The driver of an authorized emergency vehicle, when involved in an emergency operation, may exercise

the privileges set forth in this section, but
subject to the conditions stated.

(b)   The driver of an authorized emergency vehicle may...

   2.   Proceed past a steady red signal, a flashing
        red signal, or a stop sign, but only after
        slowing down as may be necessary for safe
        operation; ...

(e)   The foregoing provisions shall not relieve the
      driver of an authorized emergency vehicle from the
      duty to drive with due regard for the safety of all
      persons, nor shall such provisions protect the
      driver from the consequences of his reckless
      disregard for the safety of others.

N.Y. Vehicle and Traffic Law § 1104 (McKinney 1996).

When interpreting § 1104(e), the New York Court of Appeals
noted that the statute's use of both "due regard" and "reckless
disregard" makes it difficult for courts to determine the precise
test to be used when evaluating an emergency driver's liability.
Saarinen, 84 N.Y.2d at 500.   The Court specified the appropriate
test, holding that:

   ...a police officer's conduct in pursuing a suspected
   lawbreaker may not form the basis of civil liability to
   an injured bystander unless the officer acted in reckless
   disregard for the safety of others. This standard demands
   more than a showing of a lack of "due care under the
   circumstances"--the showing typically associated with
   ordinary negligence claims. It requires evidence that
   "the actor has intentionally done an act of an
   unreasonable character in disregard of a known or obvious
   risk that was so great as to make it highly probable that
   harm would follow" and has done so with conscious
   indifference to the outcome (Prosser and Keeton, Torts §
   34, at 213 [5th ed]; see, Restatement [Second] of Torts
   § 500).

Id. at 501.   The court continued, explaining that the purpose of granting a qualified exemption from traffic laws was to afford drivers of emergency vehicles the freedom to perform their duties unhampered by the normal rules of the road:

> Indeed, emergency personnel must routinely make conscious choices that will necessarily escalate the over-all risk to the public at large in the service of an immediate, specific law enforcement or public safety goal. Measuring the "reasonableness" of these choices against the yardstick of the traditional "due care under the circumstances" standard would undermine the evident legislative purpose of [the statute].

Id. at 502.

## III. OFFICER BRAMER DROVE AN AUTHORIZED EMERGENCY VEHICLE AND WAS ENGAGED IN AN EMERGENCY OPERATION PURSUANT TO VEHICLE AND TRAFFIC LAW § 1104.

For the purposes of Vehicle and Traffic Law § 1104, police cars are specifically categorized as "emergency vehicles" by § 101 of the title.   See Criscione v. City of New York, 97 N.Y.2d 152, 156 (2001).   Vehicular operations that constitute "emergency operation" are listed in Section 114-b:

> ...when such vehicle is engaged in transporting a sick or injured person, transporting prisoners, delivering blood or blood products in a situation involving an imminent health risk, pursuing an actual or suspected violator of the law, or responding to, or working or assisting at the scene of an accident, disaster, police call, alarm of fire, actual or potential release of hazardous materials or other emergency. Emergency operation shall not include returning from such service.

N.Y. Vehicle and Traffic Law § 114-b.

The U.S. Attorney argues that whether Officer Bramer was involved in an "emergency operation" is not clear from the record or the language of § 114-b (U.S. Att'y Resp. to Def. Summ. J. Mot. at 9).   The U.S. Attorney points to <u>Criscione</u> as support for this supposed lack of statutory clarity (U.S. Att'y Resp. to Def. Summ. J. Mot. at 7).   But in <u>Criscione</u>, the New York Court of Appeals held that the police vehicle in question *was* engaged in an emergency operation *precisely because* of the statutory language. <u>See</u> <u>Criscione</u>, 97 N.Y.2d at 157-58.   Furthermore, the court held that this determination could be made irrespective of the police department's internal emergency classifications or the officer's beliefs as to whether the situation constituted an emergency because the language of the statute was clear.   <u>See</u> <u>Id.</u>

In the instant case, Officer Bramer's responsive actions after overhearing the two radio calls fall squarely within the statutory language.   His fellow officer and the dog warden were "pursuing an actual or suspected violator of the law," Officer Bramer was nearby, he notified the police dispatcher that he was on his way to help, and he was therefore "responding to" an "other emergency." <u>See</u> § 114-b.

Because the language and intent of § 114-b are clear, this court finds as a matter of law that Officer Bramer drove an "emergency vehicle" that was engaged in an "emergency operation."

See <u>Criscione</u>, 97 N.Y.2d at 157-58.   Summary judgment is therefore granted on this question in favor of the Town of Gates.

**IV.  QUESTIONS OF FACT EXIST ON THE QUESTION OF WHETHER OFFICER BRAMER DROVE WITH "RECKLESS DISREGARD FOR THE SAFETY OF OTHERS."**

If a police officer violates a department policy governing emergency vehicle operation, that violation is an important though not dispositive factor in determining whether the officer acted recklessly.  <u>Saarinen</u>, 84 N.Y.2d at 503 n.3.  General Order 530-00 of the Gates Police Department provides that:

> Members will use extreme caution in operating police vehicles and come to a complete stop and assure safety prior to continuing at intersections where they do not have clear right-of-way.

General Order 530-00 § III.A.4.  In his deposition, Officer Bramer testified that the traffic control signal at Chili and Hinchey was red in his direction of travel (Bramer Dep. at 9).  He therefore did not have "clear right-of-way" and was required by General Order 530-00 to come to a complete stop.  Although Officer Bramer does not remember anything from about 200 feet before the intersection until after the collision (Bramer Dep. at 10), police statements from Cheryl Strong, John Hotchkiss, Theresa Plumart, and Jaqueline Ladd all indicate that Officer Bramer did not bring his vehicle to a stop.

Additionally, General Order 530-00 provides that:

> extreme care will be used when passing traffic signs or signals.  Police vehicles will ensure that all vehicle

and pedestrian traffic is aware of and yielding to the emergency vehicle.

General Order 530-00 § III.A.6.g.  Hinchey Road intersects Chili Avenue at an acute angle of approximately 30 degrees, thereby limiting visibility of cross-traffic.  See http://maps.google.com/ query "Chili Ave & Hinchey Rd, Gates, NY 14624."  It is clear from the record that Officer Bramer did not comply with department policy by not stopping at the intersection.  However, it *is* clear that Officer Bramer was aware that the policy required him to stop (Bramer Dep. 33-35).  Although a policy violation is an "important factor" in gauging recklessness, it is not dispositive. See Saarinen, 84 N.Y.2d at 503 n.3.

When gauging "reckless disregard" for the purposes of Vehicle and Traffic Law § 1104, the term is equated with the well-established tort concept of recklessness.  Szczerbiak v. Pilat, 90 N.Y.2d 553, 557 (1997).  The New York Court of Appeals has defined "reckless disregard" as:

i.   the conscious or intentional doing of an act

ii.  of an unreasonable character

ii.  in disregard of a known or obvious risk so great as to make it highly probable that harm would follow, and

iv.  done with conscious indifference to the outcome.

See Id.  With respect to the first requirement, the record in this case indicates that Officer Bramer consciously and intentionally proceeded through the intersection against a red light.  With

respect to the second requirement, Vehicle and Traffic Law § 1104 provides that Officer Bramer's act may have been unreasonable if he failed to sufficiently slow down "for safe operation."  As to the third requirement, Officer Bramer testified in his deposition that he is familiar with the area and that "I go through the intersection 100 times a day." (Bramer Dep. at 26-27).  He should therefore have been aware of the increased risk of proceeding against a red light at this intersection.  And with respect to the fourth requirement, whether the act was "done with conscious indifference to the outcome" presents a question of fact to be determined at trial.  Questions of fact therefore exist as to whether Officer Bramer's conduct constituted "reckless disregard."

Furthermore, there is a question of fact as to whether Officer Bramer was traveling in the curb lane or center lane of Chili Avenue prior to the collision.  In his deposition, Officer Bramer testified that he changed to the center lane some  300 to 400 feet before the Hinchey Rd. / Chili Ave. intersection (Bramer Dep. at 9, 20-22).  This is contradicted by the statements of Jaqueline Ladd and Cheryl Strong, who both reported in subsequent police investigation that Officer Bramer was in the curb lane with no mention of a lane change prior to the police car swerving to avoid the accident.  This is a material question of fact which is relevant to the question of whether Officer Bramer complied with

department policy in the operation of his vehicle prior to the collision.

<u>**CONCLUSION**</u>

This court finds that Officer Bramer was operating an authorized emergency vehicle and was engaged in an emergency operation as a matter of law on July 15, 2003 when he was involved in a motor vehicle accident at or near the intersection of Chili Ave. and Hinchey Rd. in the Town of Gates, N.Y.  This court also finds that questions of fact exist as to whether Officer Bramer drove with "reckless disregard for the safety of others" when he approached and proceeded through the aforesaid intersection then controlled by a red light.  I therefore grant in part and deny in part the Town of Gates' motion for summary judgment.

ALL OF THE ABOVE IS SO ORDERED.

s/
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 20, 2007